**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Scott D. Gerber, | : | Case No. 3:06-CV-1525 |
| Plaintiff, | : | Magistrate Judge Vernelis K. Armstrong |
| vs. | : | MEMORANDUM OPINION AND ORDER |
| James C. Riordan, et al., | : | |
| Defendants. | : | |

## I.    Brief Background and Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C §§ 1291 and 1332.

On June 21, 2006 Plaintiff filed his Complaint alleging breach of contract, fraud and

other related claims arising out of an allegedly failed book publishing deal.  (Docket No. 1).  On

March 3, 2009, in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, District Judge James

G. Carr issued an order of reference, pursuant to the parties' consent, transferring this case to the

undersigned to conduct all proceedings and enter an order of final judgment.  (Docket No. 60).

On May 28, 2009, the instant case was dismissed by order of this Court for lack of

personal jurisdiction.  (Docket Nos. 73 and 74).

On June 1, 2009, Plaintiff's counsel French filed a Motion to Reopen Case for Limited

1

Purpose of Allowing Counsel to Plaintiff to Withdraw.  (Docket No. 75).  On June 8, 2009 this Court granted the Motion to Reopen and Ordered that the case be reopened for the limited purpose of allowing Bruce French to withdraw as counsel for Plaintiff.  (Docket No. 76).

On June 8, 2009, Plaintiff filed, pro se, an Opposition to the withdrawal of attorney French, (accompanied by a filing by attorney French of Plaintiff's Counsel's Filing of Plaintiff's Opposition to Counsel's Motion to Withdraw as an Accommodation to Plaintiff, notwithstanding attorney French's pending Motion to Withdraw),  (Docket No. 77), and an Opposition to the Motion to Reopen for Limited Purpose of Allowing Counsel to Plaintiff to Withdraw as Counsel. (Docket No. 78).  On June 22, 2009, Plaintiff, pro se, filed a Motion for Relief From Judgment, pursuant to Fed.R.Civ.P. (60)(b)(6), seeking relief from this Court's order dismissing ths case for lack of personal jurisdiction over Defendants.  (Docket No. 80).  Also on June 22, 2009 attorney French  filed a Reply to Plaintiff's Opposition to attorney French's Motion to Withdraw. (Docket No. 82).

On June 24, 2009, Attorney Wakefield filed a Notice of Appearance as counsel for Plaintiff.  (Docket No. 84).

On June 24, 2009, Plaintiff, through attorney Wakefield, filed a Notice of Appeal to the Sixth Circuit Court of Appeals, appealing this Court's Order of June 8, 2009 dismissing Plaintiffs case for lack of personal jurisdiction over Defendants.  (Docket No. 85).

On July 29, 2009, the Sixth Circuit issued an Appeal Order granting Plaintiff's attorney Pepper's Motion to Withdraw as Counsel for Appellant.  (Docket No. 88).

On March 12, 2010, this Court issued a Memorandum Decision and Order denying Plaintiff's June 22, 2009 Rule 60(b)(6) Motion for relief from Judgment.  (Docket No. 89).

On August 18, 2011, the Sixth Circuit issued an Order reversing this Court's dismissal

2

Order of May 28, 2009, finding that this Court does have personal jurisdiction over Defendants, and ordering that the case be remanded to this Court for further proceedings.  (Docket No. 90).

On October 11, 2011, attorneys Pepper and Taft Stettinius & Hollister, LLP, (TSH), filed a Motion to Withdraw as attorney for Plaintiff.  (Docket No. 93).  On October 19, 2011 and October 20 Plaintiff, pro se, filed two virtually identical documents, an Opposition to Motion of attorneys Pepper and Taft, et.al.,'s Motion to Withdraw along with a Request for Evidentiary Hearing.(Docket Nos. 94 and 95, respectively).  (Plaintiff's October 20, 2011, filing (Docket No. 95) differs from Plaintiff's October 19, 2011 filing (Docket No. 94) in that the October 20 filing includes an attached Affidavit of attorney Wakefield.)  On October 25, 2011, attorney Pepper and TSH., filed a Reply to Plaintiffs Opposition.  (Docket No. 96).

On November 28, 2011 this Court issued a Memorandum Opinion and Order granting attorneys Pepper and TSH's Motion to Withdraw.  (Docket No. 97).

On December 14, 2011 Plaintiff, pro se, filed a Motion for Reconsideration of this Court's Order, granting attorney Pepper's Motion to Withdraw, and a Motion requesting that the undersigned recuse herself from this case.  (Docket No. 98).

## II.    Issues Before the Court

This cause is presently before this Court on Plaintiff's Motion for Reconsideration of this Court's Attorney Withdrawal Decision, (2) Motion to Recuse Magistrate Judge Armstrong, and (3) Supporting Memorandum of Law.  (Docket No. 98).

This Court shall address and resolve Plaintiff's second motion, i.e., his Motion to Recuse, before addressing Plaintiff's Motion for Reconsideration.  The reasons for this are, of course, obvious, since, if this Court were to grant Plaintiff's Motion to Recuse, it would relinquish it's authority to address any further matters that may arise in this litigation, including Plaintiff's

Motion for Reconsideration.[1]

Defendants have not filed an opposition to Plaintiffs' Motion to Recuse.

**III.    Motion to Recuse**

Plaintiff argues that a judicial officer of the United States shall recuse him or herself from a proceeding where his or her "impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Specifically, Plaintiff asserts that recusal is required where, inter alia, the judicial officer "has a personal bias or prejudice concerning a party . . ."  28 U.S.C. § 455(b).

Plaintiff further asserts a related, but analytically distinguishable consideration, that the court shall make an independent assessment of the effect that maintaining its continued jurisdiction over a matter might have on the recusal movant's emotional well being, sense of personal security and belief that he is being treated in a fair and impartial manner by the judicial officer overseeing his case.  Accordingly, Plaintiff argues that courts are called upon to assess the effect that a determination of a motion for recusal might have on the moving party's faith in the justice system and in doing so,  incorporate that factor into the overall calculus by which it decides the motion to recuse.  See, e.g., Haines v Liggett Group, 814 F. Supp 414, 428 (D.N.J. 1993) and In re Tutu Wells Contamination Litigation, 164 F.R.D. 41, 46 (D.V.I. 1995).

Plaintiff cites eight factors in support of his Motion to Reconsider, the sum and substance of which is that the undersigned is more concerned with giving the attorneys what they want - allowing them to withdraw from this case so that they may generate fees with other

---

[1]  Arguably it is logically and procedurally feasible that this Court could address and resolve Plaintiff's Motion for Reconsideration prior to addressing his Motion to Recuse.  While this case remained within the jurisdiction of the undersigned the Court could, for example, deny Plaintiff's Motion for Reconsideration and then, subsequently, grant the Motion to Recuse. However, it is the opinion of this Court that the more logical and appropriate procedural itinerary is to resolve Plaintiff's Motion to Recuse first.

representation - than with treating Plaintiff fairly.

## IV.    Recusal Under 28 U.S.C. § 455

28 U.S.C. § 455 reads in pertinent part:

§ 455.  Disqualification of justice, judge, or magistrate [magistrate judge]

> (a)   Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b)   He shall also disqualify himself in the following circumstances:

> > (1)   Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

Section 455 is designed "'to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.'" Union Planters Bank v. L&J Dev. Co., Inc., 115 F.3d 378, 383 (6th Cir. 1997) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988)).

28 U.S.C. § 455 requires federal judicial officers to disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned." The Supreme Court has held that the standard is objective, and what matters "is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). "Quite simply and quite universally, recusal [is] required whenever impartiality might reasonably be questioned." Id. (quotations omitted).

The ultimate concern for any court faced with a § 455 challenge is whether "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." United States v. Hartsel, 199 F.3d 812, 820 (6th Cir. 1999).  The standard for evaluating claims that the judicial officer overseeing a matter is impartial is an objective one,

5

and, because of that, the presiding judicial officer who is subjected to a § 455 challenge need not

recuse himself based on his/her subjective view of the party seeking recusal.  United States v.

Sammons, 918 F.2d 592, 599 (6th Cir. 1990).  On the other hand, if there is a reasonably

objective basis to support a movant's claims of impartiality or where a movant's allegations

present a close case for same, "'the judge must recuse himself.'"  Union Planters Bank, 115 F.3d

at 383 (quoting United States v. Dandy, 998 F.2d 1344, 1349 (6th Cir. 1993)).  A movant must

present some reasonably objective evidence to support an accusation of judicial impartiality to

prevail on a § 455 motion.

     The test for whether recusal is warranted or required under § 455 is what a "reasonable

person knowing all the relevant facts would think about the impartiality of the judge."  Roberts

v. Bailar, 625 F.2d 125, 129 (6th Cir. 1980).  See Hartsel, supra.

> The underlying policy informing the federal recusal statute is set forth below   The
> legislative history of the recusal statute reinforces our view of the mandatory duty
> imposed on the conflicted judge. The issue is one of law which does not depend on the
> discretion or the conscience of the individual judge or the collegial feelings of the Court.
> As this Court explained in Roberts, "To promote public confidence in the impartiality of
> the federal judicial system, the Congress in 1974 shifted  the focus of § 455" from a
> subjective to an objective standard.  625 F.2d at 129. The congressional committee report
> accompanying the 1974 change in the recusal statute stated that the new statute "sets up
> an objective standard, rather than the subjective standard set forth in the existing statute
> through the use of the phrase 'in his opinion.'" Judiciary -- Disqualification of Judges,
> H.R. Rep. No. 1453, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. Code Cong. &
> Admin. News 6351, 6354-55. As part of its effort to promote public confidence in the
> judiciary Congress enacted the current statute with the express purpose of taking the
> recusal question out of the individual discretion of the judge, . . .

Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities, 825 F.2d 946, 967

(6ht Cir. 1987).  (dissenting opinion by Circuit Judge Merritt, arguing that member of en banc

panel deciding case should have recuse himself earlier due to his involvement as a drafter and

co-sponsor of legislation that had been under attack in case before the panel).

Congress amended § 455 in 1974. The earlier version of the statute required that the judicial officer recuse only where he or she had a "substantial interest" in a case.  Under the current version of § 455, judges shall recused themselves when their impartiality "might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added); Liteky, 510 U.S. at 547.         .

All this being noted, as the late Chief Justice Rehnquist stated, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." Laird v. Tatum, 409 U.S. 824, 837, 93 S. Ct. 7, 34 L. Ed. 2d 50 (1972) (emphasis omitted). Although Laird was decided in 1972, at least two years before the changes to the recusal statute were enacted, the sentiment of judicial responsibility described by Justice Rehnquist is worth noting.

To justify recusal under 28 U.S.C. § 455, the judge's prejudice or bias must be shown to be personal or extrajudicial. See United States v. Hartsel, supra,199 F.3d at 820.  "'Personal' bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." Youn v. Track, Inc., 324 F.3d 409, 423 (6th Cir. 2003).  "In order to justify recusal under 28 U.S.C. § 455, the judge's prejudice or bias must be personal or extrajudicial." United States v. Jamieson, 427 F.3d 394, 405 (6th Cir. 2005)

Under 28 U.S.C. § 455(a), disqualifications "must be predicated upon extrajudicial conduct rather than on judicial conduct; and upon a personal bias as distinguished from [a] judicial one, arising out of the judge's background and association and not from the judge's view of the law." Green v. Nevers, 111 F.3d 1295, 1303-04 (6th Cir. 1997)

The Sixth Circuit has applied the § 455 analysis in a various contexts

In Jamieson, supra, a criminal defendant convicted of conspiracy to commit mail fraud and money laundering appealed, inter alia, the trial court's denial of his § 455 motion.  The court

of appeals held that the trial court's denial of appellant's motion to recuse was proper where the appellant had failed to allege that the district judge possessed knowledge based on extrajudicial activities or exposure that could have conceivably supported appellant's assertion that the district court judge manifested a personal bias or prejudice that negated or undermined his impartiality during the trial court proceedings.

In Reed v. Rhodes, 179 F.3d 453, 468 (6th Cir. 1999), the court found that a judge's role in overseeing a consent decree of a school district was part of his judicial responsibilities and is not evidence of "personal" or "extrajudicial" bias despite parties in the case at bar having involvement with the school system to which  the consent decree applied.  The court of appeals also found that ex parte communications between the judge and various parties in the case at bar were not determinative of bias or prejudice because such communications were ministerial in nature as to the consent decree and did not involve matters that were at issue between the parties to the litigation.

In Schilling v. Heavrin (In re Triple S Rests., Inc.), 422 F.3d 405 (6th Cir. 2005), the plaintiff, an attorney, asserted three bases in support of a motion to recuse: (1) he had had prior dealings with the judge when the judge had been an examiner before being appointed to the bench wherein plaintiff had opposed the (judge's) examiner's fee requests, ultimately leading to litigation wherein the plaintiff had referred to the examiner (judge) as incompetent, incomplete, and worthless; (2) during the proceedings of an earlier  bankruptcy case over which the judge had presided, the judge referred to certain business dealings plaintiff had engaged in as deplorable; and (3) the judge had placed the burden of proof on plaintiff to establish that he had the right to retain fee money paid to him by a trust rather than putting the burden on the trustee to prove the transfer should be avoided.  The Sixth Circuit held that the lower court's decision

8

denying plaintiff's recusal motion should be upheld because none of the examples plaintiff had

cited showed bias, prejudice or hostility sufficient to establish that the judge was unable to

decide the case on its merits, stating "conclusions, rumors, beliefs, and opinions are not

sufficient to form a basis for disqualification"  Schilling, supra, 422 F.3d 405, 418, citing,

General Aviation v. Cessna Aircraft Co., 915 F.2d 1038, 1043 (6th Cir.1990).

    See, also,  Bell v. Johnson,  404 F.3d 997, 1005, fn. 8(6th Cir. 2005).

    Even accepting Blatter's account of the off-the-record status conference, it is apparent
that the district judge did not abuse his discretion in declining to recuse himself pursuant
to § 455. . . .  First, a statement by the district judge that he would continue to retry the
case until Bell received a total verdict of at least $ 9,000 was not improper as long as the
district judge believed that a verdict of less than $ 9,000 would be against the clear
weight of the evidence, requiring him to grant a motion for  a new trial pursuant to Rule
59(a). . . As the jury had already made a liability determination, the statement could not
indicate that the judge was biased (or create an appearance of bias) in favor of one party
winning the liability phase -- the jury had already determined that Bell had prevailed in
that phase. In fact, given the post-verdict certainty of Blatter's liability, the time already
consumed in litigation, the importance of the constitutional rights at stake, and (now,
with the benefit of hindsight) the $ 34,000 verdict actually reached by the jury in Trial
No. 3, $ 9,000 seems to be a minimum damages figure relatively favorable to Blatter.
Accordingly, such a comment by the district judge would show neither bias nor an
appearance of partiality.

    Also in Bell v. Johnson, supra. the, judge's decision to discuss a piece of paper found in

the jury room did not demonstrate bias, prejudice, or the appearance of partiality.  Rather, it was

merely an effort on the part of the judge to offer guidance on the possible mutual

advantageousness of settlement, especially considering that there was no allegation that the

judge disclosed the information to only one party.

    In Youn, supra plaintiffs claimed that the judge had already decided not to believe them

where the judge had written in one order that he would "not entertain any further tales that [the

financial statements] do not exist." and where he described plaintiff's affidavits as

"unbelievable" and their discovery conduct "deplorable." .  Youn, supra 324 F.3d at 422

Plaintiff's also accused the judge of being racist against Koreans. No bias or prejudice found sufficient to support a § 455 motion

See, also,   Ullmo v. Gilmour Acad., 273 F.3d 671; 2001 U.S. App. LEXIS 26099; 2001 FED App. 0416P (6th Cir. 2001.), (court's pretrial rulings and plaintiff's counsel's feeling that the judge had animus toward him do not support motion to recuse).

As noted, Plaintiff herein refers to eight separate factors, infra, in support of his Motion to Recuse.  Consistent with the standard for evaluating judicial disqualification of recusal, enunciated above, if one, several in combination or all of the factors meet the threshold requirement of indicating objective bias or prejudice, then the undersigned would be compelled to recuse herself from this case.  Otherwise, in the words of Justice Rehnquist, this Court would have the duty to "sit where not disqualified."

The question currently before this Court is fairly simple: would a reasonable person find that the factors listed by Plaintiff embody, implicate or reveal a bias or prejudice, arising from some personal or extraneous consideration, that is sufficiently onerous that this Court would be unable to address Plaintiff's case with impartiality.[2]

---

[2]   The factors listed by Plaintiff are assertions of putative fact and, as such, they can either be viewed with an eye toward determining whether each such assertion sets forth a true, half-true or hardly true representation of the events and attitudes described therein or they can be accepted, for the sake of argument, at face value and, thus, be considered as true and accurate representations of the events and attitudes they purport to describe.  It is the latter orientation toward  Plaintiff's assertions that places them a light most favorable to the end sought by Plaintiff's Motion.

Accordingly, for the purpose of addressing Plaintiff's Motion to Recuse in a light that is most favorable to Plaintiff, this Court shall assume, ex hypothesi, that such averments, claims, statements or insinuations articulated by Plaintiff in the eight factors are true as stated by Plaintiff.  Therefore, the Court must ask, does any one of the fact claims asserted by Plaintiff reveal an  animus of the Court that a reasonable person would see as rendering the Court incapable of being impartial toward Plaintiff.

In this regard it is worth noting that none of the decisions the undersigned has made in this case have been affected or influenced by a <u>subjectively experienced</u>, pernicious animus, bias or prejudice toward Plaintiff, as Plaintiff has suggested in his instant Motion.  Indeed, no subjective considerations have influenced the undersigned's handling of any of the matters that have come before her other than the intent to apply fairly and equitably the facts as she has understood them to the laws as she has determined them to be.  That the undersigned and Plaintiff may differ in opinion as to the significance and meaning of a particular set of facts or the interpretation of some applicable law is understandable and an inevitable outcome of the dispute resolution process that is one of the primary responsibilities of this Court.  Such differences of opinion do not, however, emanate from any subjective disinclination toward Plaintiff on the part of the undersigned.[3]

---

[3]  In general, it is the nature of the litigation process that, parties present their claims and defenses with divergent narratives of events and opposing legal arguments.  Inevitably, as is the role of the Court, decisions are made that emphasize one narrative over another or one legal analysis over another, and these decisions, unavoidably, lead to the disappointment of at least one and, quite possibly, all parties involved.  Only where no decision is made can no party be disappointed.  Differences in opinion are neither definitionally nor functionally equivalent to personal enmity or malignant animus, but only a necessary, collateral consequence of the functioning of the legal process.

All this being said, however, the undersigned can attest that she has never viewed Plaintiff as anything more, or less, than simply a litigant with a case, entailing all the responsibilities and obligations inherent therein.  Yet as discussed, above, it is not the personal, subjective motivations of the undersigned that are to guide the Court's decision on the matter's raised in the instant Motion but, rather, whether a reasonable, objective third party would view the factors identified by Plaintiff as embodying bias or prejudice that, in turn, reveal an inability to maintain impartiality toward Plaintiff in the current case.

### V.    Factors that Plaintiff Says Require Recusal

1.  Attorney French was purportedly allowed to withdraw before the time for Plaintiff to object had expired.

On May 28, 2009, this Court ordered that this case be dismissed.  (Docket Nos. 73 and 74).  At that point this Court relinquished authority to rule on matters or disputes in the case.

On June 1, 2009, Plaintiff's counsel French filed a motion with one primary objective, that the Court reopen the case so as to allow attorney French to withdraw from his representation of Plaintiff.   (Docket No. 75).  This Court construed Plaintiff's counsel's motion as two separate motions consolidated in a single filing: one, a motion to reopen the case for a limited purpose; and two, a motion to allow attorney French to withdraw from his representation of Plaintiff.

On June 8, 2009, this Court granted the Motion to Reopen and Ordered that the case be reopened for the limited purpose and allowed attorney French to withdraw as counsel for Plaintiff.  (Docket No. 76).   As stated in the Order, "The Court finds that the movant gave to all appropriate parties notice of his intended action."

Also on June 8, 2009, Plaintiff filed his Opposition to Withdrawal of attorney French. (Docket No. 77).  Interestingly, Plaintiff's Opposition was filed by attorney French, on Plaintiff's behalf because Plaintiff was situated in the Commonwealth of Virginia at the time and was "not licenced before this Court."  See, Plaintiff's Counsel's Filing of Plaintiff's Opposition to Counsel's Motion to Withdraw as an Accommodation to Plaintiff.  (Docket No. 77).  As set forth in the Accommodation, "From a review of the website of the United States Postal Service, it appears that the motion to withdraw was received by Scott D. Gerber on June 5, 2009.  The attached pleading [i.e., Plaintiff's pro se Opposition to attorney French's Motion to Withdraw] was received by French on June 7, 2009." (Docket No. 77)

12

Additionally, On June 8, 2009, Plaintiff filed, pro se, an Opposition to the Motion to Reopen for Limited Purpose of Allowing Counsel to Plaintiff to Withdraw as Counsel.  (Docket No. 78).

Rule 7.1(d) of the Local Civil Rules for the United States District Court, Northern District of Ohio provides, as to memoranda in opposition that, "[u]nless otherwise ordered by the Judicial Officer, each party opposing a motion must serve and file a memorandum in opposition . . . within fourteen (14) days after service of any non-dispositive motion."

Local Rule 83.9 provides for withdrawal of counsel but does not contemplate in its language opposition by the party to the attorney's notice to withdraw.  Rule 83.9 does not designate a  time frame for response or challenge by the party.  In fact, the Rule refers to withdrawing counsel giving notice to the client and parties and obtaining "leave of court." See Rule 83.9 Local Civil Rules for the United States District Court, Northern District of Ohio. (emphasis added).

Rule 83.9 refers to the attorney's withdrawal request as a "notice."  As a petition presented to the court it is reasonable to construe such a  notice as a not requiring a response.  If construed otherwise, however, under the local rules, a party would have, not including weekends and holidays, fourteen days after service to challenge or otherwise respond to an attorney's notice/motion of withdrawal.

So construed, the Court's June 8, 2009 Order (which reopened the case for a limited purpose and granted attorney French's Motion to Withdraw) was, admittedly, premature, as it was entered before the response time had expired.  The question, however, is not whether the Court issued its decision prematurely and in a way that blunted Plaintiff's opportunity to be heard regarding the concerns he may have had about the withdrawal of his attorney, but, rather,

13

whether such a sequence of events would be viewed by a reasonable person as indicating bias or prejudice against Plaintiff by the Court.

These events suggest only that the Court ruled on attorney French's Motion to Withdraw before giving Plaintiff an opportunity to challenge his former attorney's effort to terminate representation.

Review of these events, especially in comparison to the several § 455 cases cited above, makes it clear to this Court that a reasonable person would not interpret the Court's actions as evincing a bias or prejudice sufficiently onerous to support a finding that the undersigned was or is unable to address the issues of this case with appropriate impartiality.  Accordingly, the Court does not find that Plaintiff's first factor constitutes an appropriate basis for recusal.

    2.  The undersigned allegedly did not comply with a commitment, purportedly made during a telephone conference, to rule on Plaintiff's supposedly timely filed opposition to attorney French's motion to withdraw.

The Court views the substance of the assertion set forth in Plaintiff's second factor as being in pari materia with the matters raised in Plaintiff's first factor and, therefore, finds that Plaintiff's second factor also does not constitute an appropriate basis for recusal.

    3.  The undersigned supposedly ruled on an incorrect version of Plaintiff's Complaint, allegedly disregarding Defendants' Ohio contacts and asserting that Plaintiff had only moved to Ohio from Virginia in 2005, and allegedly ignored Plaintiff's affidavit that he had lived and worked in Ada, Ohio since 2001, and failed to hold an evidentiary hearing on the motion to dismiss.

Plaintiff's third factor references matters that are pertinent to this Court's performance of its appropriately designated judicial duties.

Whether and how this or any court addresses matters set forth in a pleading or motion as well as whether and how a court  assesses the value and significance of various facts and how they are to be interpreted within the context of such applicable law are all functions that fall well

14

within in the purview of a court's legitimate judicial role, i.e. to review and evaluate facts or alleged facts as articulated by parties and interpret such facts in accordance with applicable law and precedent.  Such conduct and review on the part of the Court, even if erroneous, is neither bias nor prejudice nor evidence of the absence of impartiality that a reasonable person would view as warranting recusal.  Accordingly, this Court finds that  Plaintiff's third factor does not constitute an appropriate basis for recusal.

The performance of a court's legal duties, even where technical error may have occurred to the detriment of a party, is not evidence of bias or prejudice or a basis for concluding that a court could not be impartial in its handling of a case.  See  Reed v. Rhodes, supra, 179 F.3d at 468.

The remaining bases of Plaintiff's Motion to Recuse are:

4.  The undersigned supposedly failed to rule in a timely manner on Plaintiff's motion for relief from judgment under Fed.R.Civ.Pro. 60(B)(6).

5.  The Sixth Circuit Court of Appeals reversed the undersigned on this matter.

6.  The undersigned allegedly instructed chamber's staff to contact Plaintiff directly while Plaintiff was supposedly represented by counsel.

7.  The undersigned granted attorney Pepper's motion to withdraw in the absence of an evidentiary hearing, despite Plaintiff's having filed an opposition to said motion, which opposition contained an affidavit, signed by attorney Wakefield, that purportedly challenged certain facts ostensibly relevant to attorney Pepper's motion to withdraw.

8.  The undersigned purportedly erroneously asserted that attorney Pepper was not Plaintiff's attorney of record in the Sixth Circuit.

These factors, like the first three factor's discussed above, equally fail to adduce events or circumstances that rise to the level of bias or prejudice.  As with the first three of Plaintiff's eight factors, factors 4 though 8 only refer to conduct or circumstances that fall well within the ambit of the undersigned's role as a judicial officer and neither describe nor implicate views,

statements or conduct that a reasonable person could conceivably view as embodying bias or prejudice of sufficient intensity to support the conclusion that the undersigned lacks the capacity to address, with impartiality, all matters that come before her in this case.

Concerning Plaintiff's claim that an adverse ruling on his Motion to Recuse would cause him to lose faith in the judicial system, this Court turns to, and takes judicial notice of Plaintiff's biographical page at the Ohio Northern University website, see

http://www.law.onu.edu/faculty_staff/scottgerber/index.html.

Cursory review of Plaintiff's biographical information on the ONU website reveals a person with a substantial and sophisticated understanding of the history, philosophy and practical functioning of the American judicial system.  Plaintiff's claim that an adverse ruling on the instant Motion could trigger a crisis of faith in the judicial process does not appear well founded.  Plaintiff is an attorney.  He worked as a law clerk for a federal district court judge and practiced law at a Boston based law firm.  Currently he is a senior research scholar in law and politics at ONU.  He is the author of numerous publications on the law and politics: books, articles, book reviews, op-ed pieces, encyclopedia articles and other writings.  Such a background and experience would hardly suggest a person so unfamiliar with the judicial system that an adverse ruling would disrupt his faith in the court system.  On the contrary, Plaintiffs is sufficiently knowledgeable about both the theory and functioning of the law that whatever faith he had when filing this litigation is unlikely to be affected one way or the other by this Court's ruling on the Motion before it.

Accordingly, none of the factors raised by Plaintiff either individually or in any combination satisfy the threshold requirements of the recusal statute.  Therefore, Plaintiff's Motion to Recuse is DENIED.

## VI.    Motion for Reconsideration

Plaintiff's Motion for Reconsideration, (Docket No. 98), lists eleven reasons in support of Plaintiff's effort to have this Court reverse it's Order of November 11, 2011, (Docket No. 97), which granted attorneys Pepper and TSH's Motion to Withdraw (Docket No. 93).

The Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration of interlocutory or nondispositive orders.  However, district courts possess the authority to hear such motions.  Such authority is grounded "both in common law and in Rule 54(b) of the Federal Rules of Civil Procedure."  Bonar v. Romano, 2010 U.S. Dist. LEXIS 34165, *2 (S.D. Ohio, W.D. April 7, 2010).  See also Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 Fed. Appx. 949, 952 (6th Cir. 2004).  ("District courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment.")  See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12, 103 S. Ct. 927, 74 L. Ed. 2d 765, 778 (1983)  ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge" citing at footnote 14,Fed. Rule Civ. Proc. 54(b) and 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4478, pp. 788-792 (1981), in support);  Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)  ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.")..[4]

---

[4]  Mallory, supra, refers to Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1, 47-48, 87 L. Ed. 1731, 63 S. Ct. 1393 (1943) andSimmons Co. v. Grier Brothers Co., 258 U.S. 82, 88, 66 L. Ed. 475, 42 S. Ct. 196 (1922) (A district court may modify, or even rescind, such interlocutory orders.) in support of the proposition that district courts have the authority to review and reconsider interlocutory orders at any time prior to the entry of final judgement. Marconi, which was decided in 1943, does not cite to the then recently enacted Federal Rules of Civil Procedure in support of this proposition that.  Thus Marconi and Simmons Co would both appear to stand for the proposition that the inherent power of trial court's to reconsider

17

"Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence; or, (3) a need to correct a clear error or prevent manifest injustice." Bonar v. Romano, supra, 2010 U.S. Dist. LEXIS 34165, *2. See also Rodriguez, at 959. (citing Reich v. Hall Holding Co., 990 F. Supp. 955, 965 (N.D. Ohio 1998)).  However, a motion for reconsideration "should not be used to re-litigate issues previously considered." American Marietta Corp. v. Essroc Cement Corp., 59 Fed. Appx. 668, 671 (6th Cir. Feb. 19, 2003).

While not binding on the instant Court, guidance on the manner in which this Court is to consider the issues raised in Plaintiff's Motion may be found in a case decided last year by the United States District Court for the Eastern District of Michigan.

"The requirements for the granting of motions for reconsideration are set forth in Local Rule 7.1(h), . . ."  Seldon v. Lehman Bros., 2011 U.S. Dist. LEXIS 14705, *1 (E.D.Mich. S.D.

---

interlocutory orders was based in common law.

As to the grounding of the trial court's authority to reconsider interlocutory decisions within the scope of the Federal Rules of Civil Procedure, "[c]ivil [r]ule 54(b) confirms the trial court's necessary authority to correct itself."  18B C.Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4478.1, pp. 692 (2002),  Citing Moses H. Cone Mem'l Hosp., supra. See also Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 166-68 (2nd Cir. 2003) ("We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.' . . . Thus, those decision may not usually be changed unless there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.' . . . We review for abuse of discretion a district court's denial of the Rule 54(b) motion. . ." (citations omitted). Motions for reconsideration are not properly construed under Fed.R.Civ.Pr. Rule 60(b) as Rule 60(b) provides for relief "from a final judgment, order, or proceeding . . ."

18

February 10, 2011).  Although the Local Rules for the Northern District of Ohio do not contain

an equivalent rule that specifically articulates the requirements for granting motions for

reconsideration, the pertinent local rule from the Eastern District of Michigan offers the

following guidelines:

> Grounds.  Generally, and without restricting the court's discretion, the court will not grant
> motions for rehearing or reconsideration that merely present the same issues ruled upon
> by  the court, either expressly or by reasonable implication. The movant must not only
> demonstrate a palpable defect by which the court and the parties and other persons
> entitled to be heard on the motion have been misled but also show that correcting the
> defect will result in a different disposition of the case.

Local Rule 7.1(h)(3), U.S. District Court, Eastern District of Michigan. (emphasis added). A

"palpable defect" is "a defect that is obvious, clear, unmistakable, manifest or plain."  United

States v. Lockett, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004).

The Court reviews Plaintiff's Motion for Reconsideration in accordance with a

framework established by the foregoing discussion and finds no intervening change of

controlling law; new evidence; need to correct a clear error or prevent manifest injustice  or

palpable defect in its previous ruling sufficient to warrant granting Plaintiff's Motion for

Reconsideration.

Moreover, what is manifestly obvious to this Court as it has reviewed attorneys Pepper

and TSH's Motion to Withdraw, Plaintiff's Verified Opposition and the attorneys' Reply along

with Plaintiff's Motion for Reconsideration is the tone of acrimony, loss of faith and distrust that

emerges, palpably in these filings.  Indeed, critical and accusatory animus toward attorneys

Pepper and TSH contained in the pages of Plaintiffs most recent filing is further support for the

conclusion that this Court reached in its November 28, 2011 Memorandum Decision and Order.

The Rules of Professional Conduct adopted by the State of Ohio provide, inter alia,  that

19

an attorney may not continue to represent a client where "there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by . . . the lawyer's own personal interests." Prof. Con. R. 1.7(a)(2). Where such a conflict of interest exists, a "lawyer shall not . . . continue the representation."  Prof. Con. R Rule 1.7(b),

From the vantage point of this Court, Plaintiff's statements regarding attorneys Pepper and TSH, as set forth in the his Opposition and the Motion currently under consideration convincingly provide additional support for the conclusion previously reached by this Court.

As set forth in his Opposition and the Motion for Reconsideration, Plaintiff's views of attorneys Pepper and TSH are that they have lied to the Court, played games to abandon their responsibilities, manipulated him into losing his ability to maintain the pro bono representation provided by his previous attorney French and, despite having done quality work on his appeal, are otherwise discreditable.

Plaintiff states, "Taft itself is engaged in gamesmanship to try to abandon its legal and ethical responsibilities to me" (Plaintiff's Opposition, Docket No. 95, 3), "[I[t is time to stop allowing the attorneys to play games at the Plaintiff's expense" (Plaintiff's Opposition, Docket No. 95, 7), "Indeed, like many of their statements of 'fact' in the motion to withdraw, Pepper and Taft's assertion that Pepper 'and other Taft lawyers then communicated regarding whether Pepper or Taft had an obligation to represent Plaintiff after remand' is untrue."  (Id.), (emphasis original),  "Importantly, Pepper and Taft do not maintain that it would be an unreasonable financial burden on them to continue to represent me pro bono."  (Id), (emphasis original) "For this Court to allow Pepper and Taft to try to suggest otherwise would be to once again endorse the sort of "gamesmanship" by attorneys at my expense . . ." (Plaintiff's Opposition, Docket No.

20

95, 8), (emphasis original), "Pepper and Taft also fail to appreciate that the legal profession is not simply about making sure that lawyers make a lot of money." (Plaintiff's Opposition, Docket No. 95, 8-9), "Taft has made unavailable to me the one lawyer who would have been required to continue to represent me on a pro bono basis." (Plaintiff's Opposition, Docket No. 95, 10), "It would be nothing short malpractice for Pepper and Taft to withdraw as my attorneys in light of their conscious choice not to brief the *Conti* issue, a Sixth Circuit decision that I had specifically brought to their attention . . ." (Id.), (italics original),  "It is time to finish the case properly without any more gamesmanship by the attorneys . . ." (Plaintiff's Opposition, Docket No. 95, 10-11)  "Plaintiff has been unable to secure quality substitute counsel on a pro bono basis; the fact that Plaintiff would have to pay for a new lawyer . . . is itself prejudicial to Plaintiff" (Plaintiff's Motion for Reconsideration, Docket No. 98, 5), "Pepper and Taft now want to void that agreement so that they can make money on other cases." (Plaintiff's Motion for Reconsideration, Docket No. 98, 6)

Finally, the Plaintiff observes, see (Plaintiff's Opposition, Docket No. 95, 10), that, if this contested motion to withdraw is denied, it is unlikely that the he will be able to secure capable and affordable substitute counsel of his choosing.  While Plaintiff has not addressed his financial condition, and this Court is not inquiring into it, the Court would simply note that frugality and indigence are not synonymous and affordable legal counsel need not necessarily be pro bono representation.

Clearly, the resonance of distrust and acrimony expressed by Plaintiff toward attorneys French and TSH cannot but create an atmosphere ripe for conflict of interest, and sufficient to justify said attorneys withdrawal from representation.

Accordingly, Plaintiff's Motion for Reconsideration is DENIED.

21

**VII.  Conclusion.**

For the reasons set forth above, the undersigned DENIES Plaintiff's Motion to Recuse and DENIES Plaintiff's Motion for Reconsideration.

IT IS SO ORDERED.

                                        s/   *Vernelis K. Armstrong*

                                      /s/Vernelis K. Armstrong
                                      United States Magistrate Judge

Date:   January 31, 2012