IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **SCOTT D. GERBER**, | : | Case No. 3:06-CV-01525 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM OPINION AND ORDER** |
| **JAMES C. RIORDAN, ET AL.**, | : | |
| Defendants. | | |

## I. INTRODUCTION.

Pursuant to FED. R. CIV. P. 55(a), the Clerk of Court for United States District Court, Northern District of Ohio, entered default against Defendants James C. Riordan (Riordan) and Seven Locks Press for failing to plead or otherwise defend Plaintiff's First Amended Complaint for breach of contract arising from a failed book publishing deal (Docket No. 107). Subsequently, Plaintiff moved this Court for a default judgment against the Defendants (Docket No. 110) and on August 24, 2012, the undersigned Magistrate Judge held a hearing under FED. R. CIV. P. Rule 55(b)(2) to determine the amount of damages. Defendants failed to appear or have representation. The Magistrate Judge finds that Plaintiff has provided a sufficient legal basis for an award of damages.

## II. PROCEDURAL BACKGROUND.

A succinct review of the relevant facts follows. On June 21, 2006, Plaintiff filed a Complaint for breach of contract and common law tort violations against Defendant Seven Locks Press (SLP), a printer and publisher of books headquartered in Santa Ana, California and its representative and authorized agent, Defendant Riordan. On July 13, 2006, Plaintiff filed a First Amended Complaint (Docket No. 6). Plaintiff and his counsel requested that the terms of the contract be enforced through Alternate Dispute Resolution (ADR) in Toledo, Ohio. United States District Court Judge James G. Carr ordered that the parties submit to mediation in California (Docket Nos. 47, 55). Plaintiff requested that the Court ascertain whether a settlement agreement existed (Docket No. 51). Neither the mediation nor the attempts at settling the case were successful and the contract claim was scheduled for trial (Docket No. 71).

The parties consented to the jurisdiction of the undersigned Magistrate Judge and the case was dismissed for want of personal jurisdiction (Docket No. 73). Brian M. Wakefield and Timothy Pepper of Taft Stettinius & Hollister, LLP (the Taft partnership), represented Plaintiff in an appeal to the Sixth Circuit Court of Appeals. The Sixth Circuit Court of Appeals reversed the decision and remanded the case to this district court for further proceedings (Docket No. 92).

Following remand, Mr. Wakefield was no longer able to represent Plaintiff. Mr. Pepper and the Taft partnership were granted leave to withdraw as counsel and Plaintiff was given time to obtain new counsel (Docket No. 92). A notice was mailed by regular United States mail to Defendants on March 21, 2012, scheduling a telephone conference on April 3, 2012, to establish a trial date (Docket No. 101). Defendant Riordan did not make himself available for the telephone conference so Plaintiff, *pro se*, filed an Application for Entry of Default pursuant to Rule 55(a) against Defendants for failing to file a responsive pleading to the First Amended Complaint. Plaintiff served the Application on Defendants by regular United States Mail (Docket No. 103). On April 30, 2012, the Clerk of Court entered default for failure to plead or otherwise

defend (Docket No. 107).

On May 4, 2012, Plaintiff, *pro se*, filed an Application to Clerk for Entry of Default pursuant to Rule 55(b)(1) and served it upon Defendants by regular United States mail (Docket No. 109). On May 10, 2012, Plaintiff, *pro se*, filed a Motion for Default Judgment pursuant to FED. R. CIV. P. 55(b)(2), Affidavit in Support and Proposed Default Judgment. Plaintiff served a copy of this Motion and proposed judgment on Defendants by regular United States mail (Docket No. 110, Attachments 1 & 2).

The Magistrate Judge conduced a final telephone conference on May 14, 2012, during which a hearing to assess damages was scheduled for August 24, 2012 (Docket No. 113). The hearing notices served upon Defendants were returned "not deliverable as addressed" (Docket No. 114 & 115). At the August 2012 damages hearing, Plaintiff, *pro se*, and Dr. William O'Brien, a clinical psychologist and professor at Bowling Green State University, appeared and testified regarding Plaintiff's damages related to the breached publishing contract. Defendants failed to appear or have representation.

### III. STATUTORY FRAMEWORK FOR A MOTION FOR DEFAULT JUDGMENT.

FED.R.CIV.P. 55 contemplates a two-step process in obtaining judgment against a defendant who has failed to plead or otherwise defend. *Berk v. Moore*, 2012 WL 3780303, *2 (S.D.Ohio,2012). First, a plaintiff must request from the Clerk of Court an entry of default, describing the particulars of the defendant's failure to plead or otherwise defend. *Id.* (*citing* FED.R.CIV.P. 55(a). After a default has been entered pursuant to Rule 55(a), the party seeking relief from a defaulting party may apply for default judgment pursuant to Rule 55(b). *HICA Educational Loan Corporation v. Jones*, 2012 WL 3579690, *1 (N. D. Ohio 2012). A default on well-pleaded allegations establishes defendant's liability, but plaintiff bears the burden of establishing damages. *Id.* (*citing Flynn v. People's Choice Home Loans, Incorporated,* 440 Fed. Appx. 452, 457 (6th Cir. 2011) (*citing Antoine v. Atlas Turner*, *Incorporated*, 66 F.3d 105, 110 (6th Cir. 1995)). In order to enter default judgment, the Court must determine the amount of damages. *Id.* The Court may determine damages

3

either by holding an evidentiary hearing or may determine the amount of damages by affidavit and/or other documentary evidence. *Id.* (*See* RULE 55(b)). An evidentiary hearing is not required by RULE 55(b) if the amount of damages can be determined by computation from the record before the Court. *Id.*

### IV. ANALYSIS.

The undersigned Magistrate Judge finds that default judgment as to liability is appropriate here because Defendants failed to respond to a validly served First Amended Complaint. Therefore, the allegations of Plaintiff's First Amended Complaint relating to liability are accepted as true.

Turning to the amount of damages, the Magistrate finds that a hearing was necessary to identify definite figures of loss. Plaintiff supplemented his request for damages with an itemized list of expenses. The damages are capable of ascertainment from the First Amended Complaint, documentary evidence, Plaintiff's affidavit and Plaintiff's testimony.

**A. COMPENSATORY DAMAGES.**

Compensatory damages are dependent on actual injury. *Slough v. Telb,* 644 F. Supp. 2d 978, 993 (N.D.Ohio 2009) (*citing Frontier Insurance Company v. Blaty,* 454 F.3d 590, 603 (6th Cir.2006)). Compensatory damages may be awarded for specific monetary losses such as lost wages, lost earning capacity, medical expenses, as well as for injuries not quantifiable such as pain and suffering, emotional distress, and so on. *Id.* (*citing Memphis Community School District v. Stachura*, 106 S.Ct. 2537, 2543 (1986) ("Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation, personal humiliation, and mental anguish and suffering.' ").

1. Plaintiff testified that he paid attorney fees totaling **$2,554.68**. He confirmed the payment of $2,099.68 paid to Bruce French and $455 paid to the Taft partnership, by reviewing his check registers, an invoice from Attorney French and an electronic mail message from the Taft partnership (Docket No. 117, Attachment 1, ¶s 20 & 21).

2. The Court required that the parties undergo mediation to be conducted by the Arts Arbitration and Mediation Service of California (AAMS). Plaintiff paid **$250** to mediate his claims in the California venue. He confirmed this amount by reviewing his cashed checks and the bill submitted by AAMS (Docket No. 59; Docket No. 117, Attachment 1, ¶ 19).

3. Plaintiff testified that he incurred expenses for mailing and copying in the total amount of **$470.73**. Specifically, he expended $250 in postage, $145.25 for certified copies and $75.48 for shipping by FedEx) (Plaintiff's Exhibit 6).

4. In June 2005 and November 2005, Plaintiff forwarded checks to Defendants totaling **$11,500** in contemplation that Defendants would publish *The Law Clerk* (Plaintiff's Exhibit 1).

5. In May 2007 Plaintiff effectuated a cover upon breach by Defendants, incurring costs of **$7,046.39** for the publication of 2,200 copies of *The Law Clerk* by Kent State University Press (Plaintiff's Exhibit 2).

6. Plaintiff averred that he spent **$500** in medical co-payments for his sessions with Dr. O'Brien (Docket No. 117, Attachment 1, ¶ 28).

7. In contemplation that he would have books to sell, Plaintiff expended **$500** to make arrangements to attend a book fair in Washington, D.C.(Docket No. 117, Attachment 1,¶ 27).

8. Plaintiff explained that he endured emotional distress for a period of approximately eighteen months that was causally related to Defendant Riordan's failure to fulfill promises. Dr. O'Brien explained that these feelings were augmented by an impending application for tenure which his employer considered during the same time. The Magistrate concludes that Plaintiff could have easily been driven to distress based on his dealings with Defendants. Defendants failed to operate in good faith forcing Plaintiff to cancel book signings and appearances at book expos, suffer through the embarrassment of being unable to produce copies of a book as promised and expend additional funds to get his manuscript published.

There is no empirical or medical evidence from which the Magistrate can conduct a mathematical calculation of damages. However, Plaintiff placed a value on his emotional reaction to the entire incident at $75,000 after listening to the testimony adduced at the hearing, re-reading his well-pled allegations and exposing the threats to his counsel (Exhibit 12). There has been no attempt by Defendants to present evidence that would refute the emotional harm to Plaintiff. The Sixth Circuit has affirmed awards of emotional distress damages where the only evidence of those damages was from the Plaintiff's own testimony about how the incident made him feel. *See Baumgardner v. Secretary, United States Department of Housing and Urban Development on behalf of Holley,* 960 F. 2d 572, 581 (6th Cir. 1992). The Magistrate finds that $75,000 is an appropriate amount for emotional distress damages.

9. Plaintiff claims that he lost future royalties from cancelled book signings and the delay in obtaining the international standard book number (ISBN) from Defendants. To support this amount of opportunity/revenue lost, Plaintiff presented evidence that he was deprived of an opportunity to present his book to a law and literature class at Michigan State University (MSU) (Plaintiff's Exhibit 10). Plaintiff testified that he was deprived of advancing book sales at least twice.

Under the express terms of the contract, Plaintiff was entitled to royalties as follows:

Regular Sales. On all net sales (all dollars received by the Publisher from the sale of the book) of this publication in hardcover a royalty of 25% of the net sales revenue will be paid.
Remainder Sales. On trade discounts of 60% or more, a ½ royalty will be paid and on trade discounts exceeding 80%, Author will receive 5% of the net amount received.
Secondary Rights. The Publisher and the Author share 50% each of the net proceeds of any Foreign Translation rights sale . . . On any secondary rights sale the Publisher will receive a 10% agent's fee.

(Docket No. 1, Attachment 1, p. 3 of 5).

In arriving at the estimated losses, Plaintiff considered the projected number of book signings, multiplied them by the number of books he speculated would sell at a successful book signing event and the number of signings he missed and then dividing that figure by his royalty percentage. In addition, Plaintiff

6

calculated his lost general sales by utilizing the number of copies of the book that Kent State University of Press predicted that it would sell if there had been no ISBN problems (Docket No. 117, Attachment 1, ¶ 25). According to Plaintiff the estimated lost revenue is $5,000.

In Ohio, the plaintiff carries the burden of proving the lost profit damages, the difference between the price Plaintiff would have received under the contract less the expense of performance that was saved because of the breach. *Kosier v. DeRosa*, 169 Ohio App. 3d 150, 158, 862 N. E. 2d 159, 165 (2006). Damages are not recoverable beyond an amount that can be established with reasonable certainty. *Knott v. Revolution Software Incorporated*, 181 Ohio App. 3d 519, 529, 909 N. E. 2d 702, 710 (2009) (*citing Acoustic Marketing Research, Inc. v. Technics, L.L.C.,* 198 P.3d 96 (Colo.2008)). A plaintiff seeking future damages must provide the trier of fact with (1) proof of the fact that damages will accrue in the future, and (2) sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss. *Id.* So as long as the fact of future loss is certain the amount of damages awarded may be an approximation. *Id.* (*citing Acoustic*, 198 P. 3d at 98).

The Magistrate finds that the lost royalties are recoverable in this case because Plaintiff has created an analysis of his loss with some degree of accuracy. The evidence shows that Plaintiff had an established audience for future book sales. Besides the book signings that were missed, Plaintiff had at least one potential speaking forum at a university and he had advertising with college deans and in an alumnus magazine. Plaintiff projected the number of book signings he missed because of Defendants' breach and calculated the approximate number of books he could sell at each signing. This number was offset by remuneration of 25%. Although the exact numbers of this formulation are elusive, the Magistrate finds that the total loss of $5,000 is a fair approximation of Plaintiff's lost royalties.

10. Based on an offer from MSU's English Department to speak and research complied by Plaintiff on the approximate value of movie option revenue for similar novels, Plaintiff surmises that he

missed an opportunity to create a contractual agreement for the creation of a film based on his book (Docket No. 117, ¶ 10; Docket No. 117, Attachment 1, ¶ 26). However, Plaintiff has not established that this opportunity was lost and if so, that the loss was due to Defendants' breach. As a general rule, the sale of a movie option is too uncertain and too dependent on changing circumstances to warrant a judgment for its recovery.

**B.     PUNITIVE DAMAGES.**

Plaintiff seeks an award of $150,000 in punitive damages. Plaintiff arrives at this amount through recounting the fraudulent practices and representations, the delays in publishing and broken promises, all of which show that Defendants' conduct in this case was indeed intentional and sufficiently egregious to warrant punitive damages.

As a general rule, punitive damages are not recoverable in an action for breach of contract. *Goldfarb v. The Robb Report*, 101 Ohio App. 3d 134, 140, 655 N. E. 2d 211, 215 (1995). However an exception exists when the breach of contract is accompanied by a connected, but independent tort including fraud, malice or oppression. *Id.* (*citing Saberton v. Greenwald,* 146 Ohio St. 414, 426, 66 N.E.2d 224, 229-230 (1946); *Carrera v. Sandman,* 65 Ohio App.3d 422, 426, 584 N.E.2d 753, 755(1989); *R & H Trucking Inc. v. Occidental Fire & Casualty Company,* 2 Ohio App.3d 269, 272, 441 N.E.2d 816, 819 (1981); ANNOTATION, PUNITIVE DAMAGES FOR BREACH OF CONTRACT (1933), 84 A. L. R. 1345). The Magistrate finds that Plaintiff is claiming damages for intentional infliction of emotional distress, breach of contract and fraud, each of which could result in punitive awards.

This district court applies federal law to assess whether the punitive award complies with constitutional due process. The Supreme Court has instructed courts reviewing punitive damages to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference

between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm Mutual Automobile Insurance Company v. Campbell*, 123 S.Ct. 1513, 1521 (2003) (*citing BMW of North America v. Gore*, 116 S.Ct. 1589, 1598 (1996)).

   1.   **GUIDEPOST 1**

The most important indication of the reasonableness of a punitive damage award is the degree of reprehensibility of the defendant's conduct. *Id.* (*citing BMW,* 116 S.Ct. at 1598-1599). The Court instructed the lower courts to determine the reprehensibility of a defendant by considering whether: (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; (5) and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Id*. (*citing BMW*, 116 S. Ct. at 1598-1599). The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. *Id.* It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. *Id*. (*citing BMW*, 116 S.Ct at 1599).

Here, the harm Plaintiff suffered was more than purely economical in nature. The physical symptoms of the stress associated with the failure to get his book published manifested themselves in anxiety and depression. Defendant Riordan evinced indifference to the terms of the contract by accepting Plaintiff's deposits, keeping Plaintiff waiting in a state of uncertainty about when and if the book would be published and then prolonging the inevitable conclusion that he was not going to comply with the terms of the contract. Defendant Riordan took advantage of Plaintiff's financial vulnerability particularly since Plaintiff had already invested more than $10,000 to publish. Defendant Riordan repeatedly promised that he would

publish but never did. The harm was the result of intentional deceit not mere accident. Clearly Defendant Riordan's conduct was reprehensible. This factor weighs heavily in favor of granting Plaintiff punitive damages.

    2.      GUIDEPOST 2.

Turning to the second guidepost--the ratio of disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award--the Supreme Court determined that there were no rigid benchmarks that punitive damages award may not surpass. *Id.* Consequently, ratios greater than those previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages. *Id.* In other words, single digit multipliers are more than likely to comport with due process. *Id.*

The converse is also true. *Id.* When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. *Id.* The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff. *Id.*

In this case, an award of $150,000 in punitive damages has a 1.4 to 1 ratio to the compensatory damages ($107,821.80) recovered. The Magistrate is persuaded that this single digit multiplier does not cross into the line of constitutional impropriety and it is within the range that comports with due process. This factor weighs in Plaintiff's favor for granting an award of punitive damages.

    3.      GUIDEPOST 3.

The third guidepost is the disparity between the punitive damages award and the civil penalties authorized or imposed in comparative cases. *Id.* (*citing BMW*, 116 S. Ct. at 1598-1599). The due process

analysis revolves around the requirement that defendant has fair notice of potential exposure to liability. *Cooley v. Lincoln Electric Company*, 776 F. Supp. 2d 511, 554 (N.D. Ohio,2011) (*citing Romanski v. Detroit Entertainment, L.L.C.,* 426 F. 3d 629, 648 (6th Cir. 2005); *BMW, supra*, 116 S.Ct. at 1603; and *State Farm, supra*, 123 S.Ct. at 1525). In *BMW*, the Supreme Court stated that a "reviewing court engaged in determining whether an award of punitive damages is excessive should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *Id.* (*citing BMW*, *supra*, 116 S.Ct. at 1602-1603).

Inasmuch as the Defendants have failed to answer the First Amended Complaint or oppose entry of judgment, they do not argue that the punitive damage award is excessive. The most relevant yet egregious civil sanction under Ohio state law for breach of contract appears to be a ratio calculated on the basis of actual damages allocated in double digit multipliers. *See Burns v. Prudential Securities,* 167 Ohio App. 3d. 809, 850, 857 N. E. 2d 621, 653 (2006); *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 103, 781 N. E. 2d 121, 145 (2002).

Based on the principles in *BMW* and a complete review of the evidence, the Magistrate finds that Plaintiff's request for an award of $150,000 in punitive damages is not excessive in light of the high level of reprehensibility in Defendants' conduct. Under these circumstances, the $150,000 punitive damages award comports with constitutional due process.

## VIII. CONCLUSION

For the foregoing reasons, it is ordered that judgment for default is entered against Defendants; that judgment is entered in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $257,821.80, including compensatory and punitive damages, and that the judgment is subject to continuing and accruing interest from the date the judgment is entered at a per annum rate of 10%.

**IT IS SO ORDERED.**

          <u>/s/Vernelis K. Armstrong</u>
          United States Magistrate Judge

Date:  September 21, 2012